(C. D. 1412)

ALLIED FOOD CORPORATION OF AMERICA *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 8, 1952)

*John F. Kavanagh* (*William H. Fox* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: This is a protest, arising at the port of New York, against the collector's assessment of duty on grated coconut meat in light sirup imported from Cuba at 35 per centum ad valorem, less the Cuban preferential of 20 per centum (T. D. 47232), under paragraph 761 of the Tariff Act of 1930 as edible nuts, otherwise prepared or preserved, not specially provided for. It is claimed in the protest (1) that the merchandise is dutiable at 3½ cents per pound under paragraph 758 as coconut meat, shredded and desiccated, or similarly prepared, less the Cuban preferential of 20 per centum, *supra*; (2) that it is free of duty by reason of Public Law 504 (58 Stat. 817, T. D. 51173); (3) that it is dutiable at 10 per centum or 20 per centum ad valorem under paragraph 1558, less the Cuban preferential of 20 per centum; (4) that it is dutiable at 20 per centum ad valorem under paragraph 506 as confectionery, less the Cuban preferential of 20 per centum.

When the case was called for trial, a motion was made to amend the protest by adding the following:

If not dutiable as recited under the various provisions hereinbefore set forth the merchandise is dutiable under the provisions of Paragraph 1559 of the Tariff Act of 1930, as amended.

There being no objection, the motion is granted.

The pertinent provisions of the tariff act are as follows:

PAR. 758. * * * coconut meat, shredded and desiccated, or similarly prepared, 3½ cents per pound.

PAR. 761. Edible nuts, * * * pickled, or otherwise prepared or preserved, and not specially provided for, 35 per centum ad valorem; * * *.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *

The pertinent part of Public Law 504 (58 Stat. 817) is as follows:

* * * That no duty shall be levied, collected, or pavable under the Tariff Act of 1930, as amended, with respect to coconuts or coconut meat provided for in paragraph 758 of that Act, entered, or withdrawn from warehouse, for consumption, during the period beginning with the day following the date of enactment of this Act and ending with the termination of the unlimited national emergency proclaimed by the President on May 27, 1941.

Approved December 20, 1944.

At the trial it was stipulated that:

* * * all of the merchandise imported under the entry covered by this protest consists of grated coconut in light syrup, Ferro brand, in cans, similar in all material respects to the grated coconut in light syrup, Ferro brand, in cans, which was the subject to United States v. Charles R. Allen, Inc., et al., 37 C. C. P. A., C. A. D. 428, which was suit number 4621.

The record and samples in the case of *United States* v. *Charles R. Allen, Inc.*, 37 C. C. P. A. 110, C. A. D. 428, were incorporated herein. No additional evidence was offered by either party.

All of the claims made herein were made in the incorporated case, except that there, the claims under paragraphs 506 and 1558 were abandoned. The evidence therein was summarized by this court in its decision, *sub nom, Charles R. Allen, Inc.* v. *United States*, 22 Cust. Ct. 63, C. D. 1162, and by the Court of Customs and Patent Appeals in its decision, *sub nom, United States* v. *Charles R. Allen, Inc., supra.* Briefly, it appears that this type of merchandise was first produced in Cuba at a time when desiccated coconut meat could not be obtained from the Philippine Islands due to the Japanese occupation during World War II. Small quantities of this merchandise were imported in mid-1943 and larger quantities in 1944, 1945, and 1946. It was produced by shredding or grating coconut meat and cooking it in sugar sirup. This mixture was placed in cans, hermetically sealed, and again cooked. Desiccated coconut meat, on the other hand, is produced by putting shredded coconut meat through a process which takes the moisture out by drying or dehydration. It appears from the evidence that both types can be used interchangeably for most purposes and that both are sold to the same classes of customers, namely, wholesale grocers, wholesale chains, bakers, candy manufacturers, and hotel, bakery, candy, and ice-cream supply firms.

When the incorporated case was before us, we held that the merchandise was classifiable under paragraph 758 as "coconut meat, shredded and desiccated, or similarly prepared," and was entitled to free entry by reason of Public Law 504 (58 Stat. 817). We reviewed the legislative history of paragraph 758 and concluded that the provision for "coconut meat, shredded and desiccated, or similarly prepared," referred to three different articles—shredded coconut meat, desiccated coconut meat, and coconut meat, similarly prepared. We

found that the merchandise involved therein was not desiccated but that it had been prepared by a similar process and was prepared coconut meat similar to desiccated shredded coconut meat.

On appeal, the Court of Customs and Patent Appeals reversed the decision of this court, without approving the collector's classification of the merchandise as edible nuts, prepared or preserved, under paragraph 761. The court concluded from a review of the legislative history of the tariff provisions affecting coconut meat that Congress used the term "desiccated" as synonymous with "dried" or "evaporated" as distinct from "preserved" or "packed in sugar"; that the coconut meat moving in commerce throughout this period was shredded, dried, and unsweetened; that the imported merchandise, far from being "desiccated," was "preserved" or "packed in sugar" and thus not provided for under paragraph 758. The court held further that the merchandise was not "similarly prepared" to coconut meat, shredded and desiccated, since desiccated coconut meat is prepared by removing the moisture while the merchandise at bar was prepared by adding moisture. The former is dried, while the latter is preserved in sirup.

The appellate court also rejected the claim that the merchandise was classifiable under paragraph 758 by virtue of the similitude provisions in paragraph 1559 on the ground that paragraph 758 provided for shredded coconut meat in one condition, desiccated, while the instant merchandise was shredded coconut meat in another condition, packed in sugar sirup. The material of the two being identical, it was held that the rule of similitude did not apply.

Plaintiff claims in its brief that the Court of Customs and Patent Appeals misunderstood or misapplied the law and that the question of the proper classification of this merchandise should be re-examined.

The first point raised is in connection with the appellate court's use of the term "trade understanding." The court said (pp. 123–124):

* * * From the legislative history and other data of which we have taken judicial notice, *supra*, it is manifest that the trade understanding of the coconut meat provision of par. 758 from the date of its enactment down to at least 1946 included only coconut meat which had been shredded and dried by desiccation, and so moved in commerce. The merchandise at bar, far from having been dried after shredding, has been packed in liquid containing sugar, or sugar syrup, and does not "fairly and clearly" come within the terms of par. 758. * * *

Plaintiff claims that the appellate court was using the term "trade understanding" in the sense of "commercial designation" and that since there was no evidence as to commercial designation in the case, the decision is erroneous. However, it is our view that the decision was not in any way based upon commercial designation. Tariff laws are ordinarily interpreted according to the common meaning of their terms, and commercial designation is involved only when the latter dif-

fers from the common meaning. The following statements in the case of *Nylos Trading Company* v. *United States*, 37 C. C. P. A. (Customs) 71, 73–74, C. A. D. 422, are particularly applicable to the instant case:

\* \* \* Where a particular commodity was for a time the only article appearing in trade which came within the common meaning of the tariff term, the application of the term to that commodity alone was not a peculiar trade usage of the term, but indicated merely that the familiar commodity was then the only subject of importation coming within the common meaning of the term. That fact would not exclude other new articles possessing similar characteristics from the classification where the new articles resembled the well known commodity in those particulars which the statute established as criteria of the classification. \* \* \*

In the instant case and the incorporated case, it appears that shredded, desiccated coconut meat was, until 1943, the only article appearing in trade which came within the common meaning of the tariff provision in paragraph 758. It is clear, therefore, that the appellate court used the term "trade understanding" in the sense of common meaning rather than commercial designation. The court held, however, that the new article, coconut meat packed in sugar sirup, did not resemble the well-known commodity in the particulars required for classification under paragraph 758. It is on this ground, and not on the basis of any supposed commercial designation, that the decision of this court was reversed.

The next point raised by the plaintiff is that the Court of Customs and Patent Appeals failed to refer to the rule that the word "and" is often used interchangeably for the word "or" or for the punctuation mark "comma." In our decision in the incorporated case, we cited *Pacific Vegetable Oil Co.* v. *United States*, 32 C. C. P. A. 68, C. A. D. 287, wherein it was held that throughout the Tariff Act of 1930 the words "and" and "or" were frequently used interchangeably to indicate distinct articles. Following that line of reasoning, we stated that the provision in paragraph 758 for "coconut meat, shredded and desiccated, or similarly prepared," referred to distinct articles—shredded coconut meat, desiccated coconut meat, and coconut meat, similarly prepared. The Court of Customs and Patents Appeals held, on the contrary, that paragraph 758 covered only shredded and desiccated coconut meat and coconut meat, prepared in a similar manner. It concluded that the instant merchandise was not covered by paragraph 758 since it was not desiccated, but packed in liquid containing sugar or sugar sirup, and did not fairly and clearly fall within the purview of said paragraph. While the appellate court did not refer to the rule of construction that the word "and" is often used interchangeably with the word "or" or with a comma, it is clear that it did not consider the rule applicable in view of the legislative history of paragraph 758.

It is claimed by plaintiff that if the instant merchandise is not classifiable directly under paragraph 758, it is so classifiable by similitude. The Court of Customs and Patent Appeals pointed out that the doc-

trine of similitude is not applicable to articles which are identical in material but different in condition, citing *Schoenemann* v. *United States*, 119 Fed. 584; *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T. D. 31110; *Strauss & Co.* v. *United States*, 2 Ct. Cust. Appls. 203, T. D. 31946; *Corporacion Argentina* v. *United States*, 29 C.C. P. A. (Customs) 288, C. A. D. 204. The court said (pp. 120–121):

In the case at bar, the imported merchandise is shredded coconut. The material covered by par. 758 is shredded coconut. The paragraph, however, covers shredded coconut meat which has been desiccated, whereas the shredded coconut meat at bar has been packed in sugar syrup. The material is the same, but is in different condition, brought about by different methods of manufacture. The tariff item is dried, while the merchandise seeking entry is packed in liquid sugar, or sugar syrup. Under the rule of the *Schoenemann* and *Fensterer* cases, recognized as good law by the *Strauss* and *Corporacion Argentina* cases, the coconut meat excluded from par. 758 by its terms (which exclusion is supported by the legislative intent manifested in the legislative history, *supra*) cannot be admitted thereunder by force of the similitude provision, par. 1559. The *material* being identical, the rule of similitude does not apply. [Italics quoted.]

Plaintiff relies upon *United States* v. *Conkey & Co.*, 12 Cust. Ct. Appls. 552, T. D. 40783, where it was held that frozen lamb was dutiable as fresh lamb under paragraph 702 of the Tariff Act of 1922 by virtue of the similitude clause in paragraph 1460 of that act. In applying the similitude clause, the court said (p. 556):

Since the article is not eo nomine provided for, and since it is clear that it can not be classified under section 1459, we are called upon to apply the doctrine of similitude to the two paragraphs in question. In applying the doctrine laid down in the Buss and Warner case, supra, and numerous other cases, we are led to inquire, as between fresh lamb and prepared or preserved meat, which does the imported article most resemble? Clearly, it most resembles fresh lamb. Fresh lamb, under paragraph 702, is more specific than fresh meat under paragraph 706, and therefore the imported frozen merchandise should be classified, by similitude, as fresh lamb. In so deciding we are not unmindful of the very clear difference between frozen lamb and fresh lamb, but we are also especially impressed with the similarity in material, quality, texture, and use. * * *

However, in a subsequent case, *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022, where it was held that fish roe, not packed in ice, could not be classified as "fish roe for food purposes, packed in ice" by similitude, the court distinguished the *Conkey* case, *supra*, as follows (p. 161):

* * * Attention is called to the case of United States v. Conkey & Co., 12 Ct. Cust. Appls. 552, T. D. 40783, where we held frozen meat to be fresh meat, by similitude. The proof in that case clearly showed the frozen meat to be different from fresh meat, actually and commercially, but to be similar to it in material, qualities, and use; it was therefore properly classified by similitude as fresh meat. We have no such state of facts here.

It has been held that shells, washed and cleansed of dirt and animal matter, are not similar to "shells engraved, cut, ornamented, or otherwise manufactured" (*Schoenemann* v. *United States, supra*); that bisque

wares are not similar to bisque wares "if painted, tinted, stained, enameled, printed, gilded, or otherwise decorated or ornamented in any manner" (*Fensterer & Ruhe* v. *United States, supra*); that grenadine-flavored sugar sirup, testing less than 50 sugar degrees, is not similar to "mixtures containing sugar and water, testing by the polariscope above 50 sugar degrees" (*Cresca Co. (Inc.)* v. *United States*, 17 C. C. P. A. 83, T. D. 43376). In like manner, shredded coconut meat packed in sugar sirup is not similar to "coconut meat, shredded and desiccated."

Plaintiff claims, however, that the instant merchandise was similarly prepared to desiccated coconut meat.

The appellate court held that the processes of preparation were dissimilar because desiccated coconut meat was prepared by removing the moisture and the imported merchandise by adding moisture, that is, sugar sirup.

The Government points out in its brief that different methods of preparing food products are distinguished in schedule 7 of the Tariff Act of 1930. For instance, paragraph 708 (a) provides for condensed or evaporated milk in airtight containers, while paragraph 708 (b) provides for dried milk. In paragraph 713, separate provisions are made for dried eggs, and eggs, frozen or otherwise prepared or preserved. Fish, prepared or preserved, is covered by paragraph 718, while dried fish is provided for separately in paragraph 717 (c). A number of the fruit paragraphs make separate provision for the article when dried, desiccated, or evaporated, and when otherwise prepared or preserved: Paragraph 734 (apples); paragraph 735 (apricots); paragraph 736 (berries); paragraph 737 (cherries); paragraph 745 (peaches); paragraph 748 (plums, prunes, and prunelles); paragraph 749 (pears). Paragraph 765 makes separate provision for beans, dried, and beans, prepared or preserved in any manner. Paragraph 768 distinguishes mushrooms, dried, and mushrooms, otherwise prepared or preserved. Paragraph 769 provides separately for peas, dried, and peas, prepared or preserved in any manner.

It appears, therefore, that Congress intended to distinguish between dried food products and those which have been otherwise prepared or preserved, such as by cooking and canning. Paragraph 758 provides for shredded and desiccated coconut meat and coconut meat, *similarly* prepared. Had Congress meant to include coconut meat, prepared or preserved by cooking and canning, it would have used the words "*otherwise* prepared or preserved," which are found throughout schedule 7.

It has been held that a provision for an article, "dried," is more specific than a provision for such article when "otherwise prepared or preserved." *F. H. Shallus & Co.* v. *United States*, 18 C. C. P. A.

(Customs) 332, T. D. 44585; *United States* v. *Enbun Co.*, 19 C. C. P. A. (Customs) 79, T. D. 45224. Where an article is dried and then further processed, it has been held dutiable as "dried" rather than as "prepared or preserved." *United States* v. *D. L. Moss & Co.*, 22 C. C. P. A. (Customs) 249, T. D. 47159; *F. F. G. Harper & Co., Inc.* v. *United States*, 27 C. C. P. A. (Customs) 9, C. A. D. 53.

The provision in paragraph 758 includes shredded dried coconut meat and coconut meat similarly prepared. The latter phrase covers shredded dried coconut meat, further processed. *W. R. Grace & Co.* v. *United States*, 19 C. C. P. A. (Customs) 326, T. D. 45482. It does not include coconut meat, otherwise prepared or preserved.

Plaintiff also contends that there are inconsistencies and omissions in the opinion of the Court of Customs and Patent Appeals and that, therefore, the decision should not be followed by this court. We find, however, upon careful examination of the entire opinion, that no such inconsistencies exist, but that the decision is based upon a different construction of paragraph 758 than that claimed by plaintiff. It is also clear that the court considered, as we have again considered, all of the pertinent arguments raised by the plaintiff.

In view of the decision of the Court of Customs and Patent Appeals in the incorporated case and after fully considering the points raised by plaintiff in the instant case, we hold that the merchandise herein is not classifiable directly or by similitude under the provisions of paragraph 758 of the Tariff Act of 1930 for "coconut meat, shredded and desiccated, or similarly prepared." The claim that the merchandise is free of duty under Public Law 504 (58 Stat. 817) is, therefore, not applicable since the exemption granted therein includes only such coconuts and coconut meat as are provided for in paragraph 758 of the Tariff Act of 1930.

As stated by the Court of Customs and Patent Appeals in its opinion in the incorporated case, the legislative history shows that coconuts have not been treated as nuts classifiable under paragraphs such as paragraph 761 of the Tariff Act of 1930. Therefore, the collector's classification of the merchandise under that paragraph is erroneous.

Plaintiff has made two other claims in the instant case. One is for classification under paragraph 506 as confectionery and the other for classification as a nonenumerated article under paragraph 1558.

There is evidence in the record that this merchandise is used in the manufacture of candy or confectionery, but there is nothing to show that it is, in itself, confectionery. The claim under paragraph 506 is therefore overruled.

On the record herein, we find that there is no specific provision in the tariff act for the instant merchandise. Since it is clearly a manufactured article, we hold that it is properly dutiable under paragraph

1558 of the Tariff Act of 1930 at 20 per centum ad valorem, less the Cuban preferential of 20 per centum, as a nonenumerated manufactured article.

To that extent the protest is sustained. Judgment will be rendered accordingly.